UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted May 25, 2006[*]
Decided May 26, 2006

**Before**

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-4078

| | |
|---|---|
| CARL QUALLS,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>STEVE CUNNINGHAM, et al.,<br>    *Defendants-Appellees.* | Appeal from the United States<br>District Court for the<br>    Northern District of Illinois,<br>Western Division.<br><br>No. 02 C 50081<br><br>Philip G. Reinhard, *Judge.* |

**O R D E R**

Carl Qualls, a former business student at Northern Illinois University ("NIU"), sued the university and a number of its officers under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, 42 U.S.C. § 1983, and state tort law, alleging that they were deliberately indifferent to the existence of a racially hostile educational environment that caused him to receive poor grades and ultimately resulted in his

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

academic dismissal. The district court found his claims meritless and granted the defendants' motion for summary judgment. We affirm.

Because of the procedural posture of the case, we view all facts and inferences in Qualls's favor. *Hall v. Bennett*, 379 F.3d 462, 464-65 (7th Cir. 2004). Qualls, who is black, asserts that in April 1998, shortly after the campus newspaper published a series of articles on racial discrimination against university staff, he began to be "subjected to a pattern of racial profiling." He contends that he was frequently followed by campus police who timed their patrols so as to keep him under surveillance.

In the fall of 1998, Qualls joined the campus chapter of the NAACP and took on the role of Public Relations Officer for the 1998-99 school year. In that capacity, he participated in several fora that explored students' perceptions of racial tension on campus, especially tension between students and police. He also wrote several letters about racial profiling to the editor of the student newspaper, and he and other members of the campus NAACP executive board took up the cause of a black campus police officer who was allegedly terminated for complaining about his fellow officers' discriminatory treatment of black students. Because of these experiences, Qualls became increasingly fearful of the police. He ended his involvement with the NAACP in the fall of 1999 because he "did not want to become a target." Nonetheless, he sometimes felt anxious to the point that he was afraid to leave his apartment.

In Spring 2000, the university dismissed Qualls for repeatedly failing to maintain a minimally acceptable grade point average. Over the next several months, he contacted a number of the defendants to argue for his reinstatement on the ground that his poor grades were due to racial harassment. In January 2001, he filed a formal grievance under the school's Affirmative Action procedures. When this too was unsuccessful, he brought this suit.

In his complaint, Qualls claimed that the defendants had fostered a hostile educational environment by refusing to respond to his allegations of racial profiling, failing to revise the procedures for complaining about racial discrimination to make the procedures more "effective" and less intimidating, and failing to establish a "centralized" resource center for black students comparable to those for women and Latinos. He also sought to hold the defendants liable for compensatory and punitive damages under theories of disparate treatment based on race, retaliation under the First and Fourteenth Amendments, violations of his right to substantive and procedural due process, and state law theories of gross negligence and intentional infliction of emotional distress. The district court concluded that Qualls had shown no evidence of harassment or retaliation by the defendants, and that NIU's policies and procedures for redressing racial discrimination were adequate. The court also disposed

of the state law claims on the merits, holding that there was no independent cause of action for gross negligence in Illinois, and that Qualls had failed to support his claim of intentional infliction of emotional distress with evidence that any of the defendants had engaged in extreme and outrageous conduct.

On appeal, Qualls raises two principal challenges to the district court's judgment. He first contends that the district court did not apply "any legal analysis" in deciding his claims, an apparent reference to the court's failure to cite precedential authority or rule explicitly on every issue raised. But what we review is not the language of the district court's opinion, but rather its final judgment. *See Pilch v. Ashcroft*, 353 F.3d 585, 587 (7th Cir. 2003). Qualls's burden on appeal is to convince us of the existence of a genuine issue of material fact. *Ashman v. Barrows*, 438 F.3d 781, 784 (7th Cir. 2006).

He has not met that burden. To establish a hostile educational environment under Title VI, Qualls must show that the alleged harassment was severe or pervasive enough to deprive him of access to educational benefits. *See Bryant v. Indep. Sch. Dist. No. I-38 of Garvin County, Oklahoma*, 334 F.3d 928, 934 (10th Cir. 2003); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998). We agree with the district court that no reasonable person could find that Qualls was deprived of his educational opportunities just because the campus police kept tabs on him from a distance and the university administrators ignored his complaints. The police never threatened him, used racial slurs against him, or attempted to detain him. We also agree with the district court that Qualls failed to support his claim of retaliation. There is no evidence that the decision to dismiss him from the business program was pretextual, and it is strange to characterize the defendants' "refus[al] to investigate" his affirmative action grievance as retaliation, since according to Qualls, they were *never* willing to respond to his complaints. Qualls's subjective belief that the defendants wanted to punish him for speaking out against discrimination does not alone suffice to support his claim. *See Vukadinovich v. Bd. of Sch. Trustees of N. Newton Sch. Corp.*, 278 F.3d 693, 700 (7th Cir. 2002).

Qualls next argues that the district court abused its discretion by penalizing him for not drafting a separate statement of additional material facts under Local Rule 56.1 since the court did not penalize the defendants for their failure to certify their depositions under Fed. R. Civ. P. 30(f). But these two rules serve very different purposes. Local Rule 56.1 helps district judges manage their caseloads. *See Cichon v. Exelon Generation Co.,* 401 F.3d 803, 810 (7th Cir. 2005). The district court is entitled to demand strict compliance with the requirement that additional facts be included in a separate statement, *id.* at 809; *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004), because the alternative is to require the district court to "scour the record" in search of factual disputes, *see FTC v. Bay Area Bus.*

*Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005).  Here the district court properly found that Qualls failed to include a separate statement of additional material facts.  Rule 30(f), on the other hand, benefits the parties rather than the court.  Violations of it are subject to the harmless error test, *see* Fed. R. Civ. P. 61; *Goodman v. Illinois Dep't of Fin. and Prof'l Regulation*, 430 F.3d 432, 439 (7th Cir. 2005), and Qualls does not suggest any reason to doubt the authenticity of the defendants' deposition transcripts, which he himself cites as evidence to support his claims.  In any event, Qualls waived any Rule 30(f) challenge because he failed to object to the lack of certification in the district court.  *See Estremera v. United States*, 442 F.3d 580, 587 (7th Cir. 2006).

The remainder of Qualls's arguments broadly charge the district court with improperly excluding evidence from consideration, but because they are legally and factually unsubstantiated, we need not address them.

Accordingly, we **AFFIRM** the judgment of the district court.